**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HEATHER R. COX,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 09-1334** |
| | ) **Chief Judge Lancaster** |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Gary L. Lancaster,
Chief Judge                                    May _/5_, 2010

**I.    Introduction**

Plaintiff Heather R. Cox ("Cox") brings this action pursuant
to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of
the final decision of the Commissioner of Social Security
("Commissioner") denying her applications for disability insurance
benefits ("DIB") and supplemental security income ("SSI") benefits
under Titles II and XVI of the Social Security Act ("Act") [42
U.S.C. §§ 401-433, 1381-1383f]. For the reasons that follow, the
motion for summary judgment filed by Cox will be denied, the motion
for summary judgment filed by the Commissioner will be granted, and
the administrative decision of the Commissioner will be affirmed.

**II.   Procedural History**

Cox protectively applied for DIB and SSI benefits on September
13, 2006, alleging disability as of May 23, 2006. (R. at 113, 117,

1

158). The applications were administratively denied on January 16, 2007. (R. at 85, 90). Cox responded on February 10, 2007, by filing a timely request for an administrative hearing. (R. at 95). On July 9, 2008, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Mattie Harvin-Woode (the "ALJ"). (R. at 40). Cox, who was represented by counsel, appeared and testified at the hearing. (R. at 48-75). Mary Beth Kopar ("Kopar"), an impartial vocational expert, also testified at the hearing. (R. at 75-79). In a decision dated September 3, 2008, the ALJ determined that Cox was not "disabled" within the meaning of the Act. (R. at 7-21). The Appeals Council denied Cox's request for review on August 3, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Cox commenced this action on October 1, 2009, seeking judicial review of the Commissioner's decision. (Doc. No. 1). Cox and the Commissioner filed motions for summary judgment on February 20, 2010, and March 24, 2010, respectively. (Doc. Nos. 10 & 12). These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical*

2

*Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his

3

[or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which

4

enabled the claimant to survive step two is on the list
of impairments presumed severe enough to render one
disabled; if so, the claimant qualifies. §§ 404.1520(d),
416.920(d). If the claimant's impairment is not on the
list, the inquiry proceeds to step four, at which the SSA
assesses whether the claimant can do his previous work;
unless he shows that he cannot, he is determined not to
be disabled. If the claimant survives the fourth stage,
the fifth, and final, step requires the SSA to consider
so-called "vocational factors" (the claimant's age,
education, and past work experience), and to determine
whether the claimant is capable of performing other jobs
existing in significant numbers in the national economy.
§§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d
333 (2003)(footnotes omitted).

In an action in which review of an administrative
determination is sought, the agency's decision cannot be affirmed
on a ground other than that actually relied upon by the agency in
making its decision. In *Securities & Exchange Commission v.
Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947),
the Supreme Court explained:

When the case was first here, we emphasized a simple but
fundamental rule of administrative law. That rule is to
the effect that a reviewing court, in dealing with a
determination or judgment which an administrative agency
alone is authorized to make, must judge the propriety of
such action solely by the grounds invoked by the agency.
If those grounds are inadequate or improper, the court is
powerless to affirm the administrative action by
substituting what it considers to be a more adequate or
proper basis. To do so would propel the court into the
domain which Congress has set aside exclusively for the
administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals

5

for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. **Discussion**

In her decision, the ALJ determined that Cox had not engaged in substantial gainful activity subsequent to her alleged onset date. (R. at 12). Cox was found to be suffering from an adjustment disorder, an anxiety disorder, a panic disorder, hypertension and hypokalemia. (R. at 12-13). Her adjustment disorder, anxiety disorder and panic disorder were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while her hypertension and hypokalemia were deemed to be "non-severe." (*Id.*). The ALJ concluded that Cox's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 13).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Cox's residual functional capacity as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant cannot work around hazardous machinery, unprotected heights; climb ladders; drive a motor vehicle; she is limited to performing only simple, 1-3 step job tasks and instructions; she cannot perform work

6

> involving close interaction with co-workers, the general
> public, or supervisors; she cannot perform work requiring
> that she pay close attention to details or complicated
> instructions or job tasks; and she must work in low
> stress environments (that do not involve production rate
> paced work).

(R. at 14). Cox was born on June 26, 1980, making her 25 years old
as of her alleged onset date and 28 years old as of the date of the
ALJ's decision.[1]  (R. at 20, 48). She was classified as a "younger
person" under the Commissioner's regulations.    20 C.F.R. §§
404.1563(c), 416.963(c). She had both a high school education and
an ability to communicate in English.   (R. at 20).   Given the
applicable residual functional capacity and vocational assessments,
the ALJ determined that Cox could not return to her past relevant
work as a certified nursing assistant ("CNA").[2]  (R. at 20, 52-53).
Nevertheless, the ALJ concluded that Cox could work as a laundry
worker, sorter or telephone quotation clerk. (R. at 21). Kopar's
testimony established that these jobs existed in the national
economy for purposes of 42  U.S.C.  §§  423(d)(2)(A)  and
1382c(a)(3)(B).   (R. at 77).

Cox's alleged onset date directly coincides with her last day
of work as a CNA.  (R. at 149).  She apparently missed work on May
23,  2006,  because  of  vomiting  caused  by  her  anxiety  and

---

[1]

In her opinion, the ALJ mistakenly stated that Cox had been 27 years old as of her alleged onset date. (R. at 20). This mathematical error was inconsequential.

[2]

Kopar referred to this type of position as a "certified nurse's aide" position. (R. at 76).

7

hypertension. (*Id.*). She never returned to work after that absence.[3] (R. at 150). In August 2006, Cox moved out of the home that she had been sharing with her fiancé, since he had been subjecting her to verbal abuse. (R. at 438-439). On August 16, 2006, Cox was voluntarily admitted to the Clarion Psychiatric Center pursuant to 50 PA. STAT. § 7201. (R. at 438-443). She was admitted because of "severe depression and an inability to care for herself." (R. at 438). A psychotic patient evidently hit Cox during the course of her hospitalization. (R. at 442). Nevertheless, her condition apparently improved within the span of one week. Cox was discharged on August 23, 2006, at which point Dr. Thomas Radecki reported that she was "dealing with stress remarkably well." (*Id.*). Although Cox had entered the facility with a Global Assessment of Functioning ("GAF") rating of 20, she was ultimately discharged with a GAF rating of 60. (*Id.*). She moved back in with her fiancé after a brief period of reconciliation. (R. at 213).

Cox protectively applied for DIB and SSI benefits on September 13, 2006. (R. at 113, 117, 158). On December 27, 2006, Dr. T. David Newman performed a consultative psychological evaluation of Cox in order to assess the degree to which her mental impairments

---

3

It is not entirely clear from Cox's testimony whether she was discharged, or whether she simply resigned. Cox testified that she had been on a 30-day medical leave of absence designed to help her to regain "control" of her anxiety and hypertension, and that she had been unable to do so. (R. at 53).

8

were limiting her ability to engage in work-related activities. (R. at 212-217). Dr. Newman reported that Cox was "moderately" limited in her abilities to understand, remember and carry out detailed instructions, to interact appropriately with supervisors, co-workers and members of the general public, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 215). He indicated that she was only "slightly" limited in her abilities to understand, remember and carry out short, simple instructions and to make judgments concerning simple, work-related matters. (*Id.*). While noting that Cox's "stressful" living situation was preventing her from experiencing a "reasonable amelioration of her mood and anxiety complaints," Dr. Newman described her as otherwise "capable of understanding and retaining instructions to perform simple, repetitive tasks." (R. at 214).

Dr. Sharon Becker Tarter, a nonexamining medical consultant, adopted Dr. Newman's findings on January 5, 2007. (R. at 220). After reviewing the documentary evidence of Cox's impairments, Dr. Tarter indicated that Cox had only a "moderate" degree of limitation in her maintenance of social functioning, concentration, persistence and pace, and that she had only a "mild" degree of limitation in her activities of daily living. (R. at 232). No episodes of decompensation (of extended duration) were noted. (*Id.*). Dr. Tarter reported that Cox was "moderately" limited in

9

her abilities to carry out detailed instructions, to maintain attention and concentration for extended periods of time, to complete a normal workweek without significant psychologically-induced interruptions, to interact appropriately with members of the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in a work setting. (R. at 218-219). Neither Dr. Newman nor Dr. Tarter found Cox to be impacted by "marked" limitations. (R. at 215, 218-219, 232).

Cox's treating psychiatrist, Dr. Grace McGorrian, completed a medical source statement concerning Cox's mental limitations on March 31, 2008. (R. at 379-381). In that statement, Dr. McGorrian opined that Cox was "markedly" limited in her abilities to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods of time, to work with or near others without being distracted, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 379-380). Several "moderate" limitations were also identified. (Id.).

On November 26, 2008, Lisa Kotch ("Kotch"), Cox's treating therapist, completed a questionnaire regarding Cox's medical condition. (R. at 849-859). Kotch indicated that Cox had anywhere from a "moderate" to "extreme" degree of limitation with respect to her activities of daily living, depending on the particular task at

10

issue. (R. at 854). Kotch also opined that Cox's maintenance of social functioning was "extremely" limited. (*Id.*). Dr. McGorrian co-signed Kotch's questionnaire form. (*Id.*). This form, of course, was completed more than two months *after* the issuance of the ALJ's decision denying Cox's applications for DIB and SSI benefits. (R. at 7-21, 849-859).

Cox was evaluated by Dr. Robert L. Eisler, a treating psychiatrist, on December 11, 2008. (R. at 845-846). Dr. Eisler reported that Cox was "unemployable for at least one year or more due to her psychiatric disorders," and that she had a GAF rating of 20. (R. at 846). He indicated that Cox had a "poor" ability to engage in a wide range of specified work-related activities. (R. at 847-848). Like Kotch's questionnaire form, Dr. Eisler's examination report was completed *after* the issuance of the ALJ's decision. (R. at 7-21, 845-848).

The primary question for consideration is whether the Commissioner's decision denying Cox's applications for DIB and SSI benefits is "supported by substantial evidence." Before reaching that question, however, the Court must address a few threshold matters concerning the proper scope of judicial review in this case, as well as the evidence which may be properly considered at this stage in determining whether "substantial evidence" supports the Commissioner's decision. Relevant to the Court's analysis is the first sentence of § 405(g), which provides:

> Any individual, after any final decision of the
> Commissioner of Social Security made after a hearing to
> which he was a party, irrespective of the amount in
> controversy, may obtain a review of such decision by a
> civil action commenced within sixty days after the
> mailing to him of notice of such decision or within such
> further time as the Commissioner of Social Security may
> allow.

42 U.S.C. § 405(g). As the Supreme Court noted in *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), this statutory provision limits judicial review to a "final decision . . . made after a hearing . . . ." Because the Act does not define the term "final decision," the SSA is authorized to give meaning to that term by promulgating regulations. 42 U.S.C. § 405(a). The Supreme Court has construed the Commissioner's regulations to mean that the term "final decision" refers to either (1) the decision of an administrative law judge denying a claim, where the claimant's request for review has been denied by the Appeals Council, or (2) the decision of the Appeals Council denying a claim, where the claimant's request for review has been granted and the Appeals Council has issued its own decision. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

In her briefs, Cox purports to challenge *both* the decision of the ALJ denying her claims *and* the decision of the Appeals Council denying her request for review. (Doc. No. 11 at 11, 27; Doc. No. 14 at 1, 6). In other words, she seeks to challenge two distinct

12

agency actions. Nevertheless, the Court is statutorily authorized to review only "final decisions" of the Commissioner. 42 U.S.C. § 405(g). "A 'final decision' is a particular type of agency action, and not all agency determinations are final decisions." *Bacon v. Sullivan*, 969 F.2d 1517, 1519 (3d Cir. 1992). The decision of the Appeals Council denying Cox's request for review did not constitute a "final decision" within the meaning of § 405(g). *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). No statute authorizes a court to review a decision of the Appeals Council denying a claimant's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). When the Appeals Council denied Cox's request for review, *the ALJ's decision* became the *final decision* of the Commissioner in this case. *Sims*, 530 U.S. at 106-107. Hence, it is *that* decision (and not the decision of the Appeals Council denying Cox's request for review) which is presently before the Court.

The sixth sentence of § 405(g) provides:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's

13

findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g). As this language makes clear, the Court is empowered to order the taking of additional evidence before the Commissioner, provided that Cox demonstrate that there is "new evidence which is material" to the ultimate issue of disability in this case, and that there was "good cause" for her failure to incorporate such evidence into the record during the course of the proceedings before the ALJ. Evidence is "new" if it was not available at the time of the administrative proceedings, and if it is not merely cumulative of preexisting evidence. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is "material" if (1) it relates "to the time period for which benefits were denied" and (2) there is a reasonable probability that the Commissioner's decision would have been different had it been considered. *Kelley v. Commissioner of Social Security*, 566 F.3d 347, 351, n. 11 (3d Cir. 2009); *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003); *Szubak*, 745 F.2d at 833.

The documentary evidence submitted by Cox after the issuance of the ALJ's decision is "new" in the sense that it is not merely

14

cumulative of the evidence that had previously been submitted. Both Dr. Eisler and Kotch identified limitations that were more extreme than those which had previously been identified by Dr. McGorrian. (R. at 847-848, 854). Nevertheless, evidence is not "material" if it establishes only a "subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833. The ALJ's decision denying Cox's applications for DIB and SSI benefits was determinative of her status only for the period of time commencing on May 23, 2006, and ending on September 3, 2008. (R. at 21). Dr. Eisler did not examine Cox until December 11, 2008. (R. at 845-848). Even if credited, his examination findings would establish only a "subsequent deterioration" of Cox's condition. Thus, such findings cannot be the basis for a remand pursuant to the sixth sentence of § 405(g). *Pieczynski v. Barnhart*, 430 F.Supp.2d 503, 511 (W.D.Pa. 2006).

Although the questionnaire form completed by Kotch (and co-signed by Dr. McGorrian) is dated November 26, 2008, it appears to relate to a period of time that substantially overlaps with the period of time at issue in this case. Cox was initially assessed (by either Kotch or Dr. McGorrian) on February 11, 2005. (R. at 849). Her last therapy session with Kotch (prior to the completion of the questionnaire form) was conducted on November 20, 2008. (*Id.*). As far as the Court can tell, Kotch's notations were based on Cox's entire treatment history rather than on the results of a

single examination or therapy session. (R. at 849-859). Therefore, this documentary evidence is "material" within the meaning of § 405(g).

This finding of "materiality," however, does not end the inquiry. In order to obtain a remand under sentence six, Cox must establish that she had "good cause" for not submitting the evidence of her "extreme" limitations to the ALJ. 42 U.S.C. § 405(g). The *only* reason given by Cox for not submitting this evidence to the ALJ is that it was "not available" prior to the issuance of the ALJ's decision. (Doc. No. 14 at 10). Such a vague reference to the unavailability of probative evidence is insufficient to establish "good cause" within the meaning of sentence six where, as here, the evidence at issue derives from a preexisting treatment relationship. In *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit observed:

> We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having it brought before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.
> The procedure followed by the District Court in this case was consistent with the framework outlined above. The Magistrate Judge declined to review or remand for consideration of the additional evidence that Matthews had submitted to the Appeals Council because the Magistrate Judge concluded that Matthews had failed to

show good cause for not presenting the evidence to the ALJ. Although the Magistrate Judge believed that the evaluation prepared by Baine was new and material evidence, an issue not reached by the District Court, the Magistrate Judge noted that Matthews had not explained why she did not attempt to obtain Baine's evaluation at a time when it could be considered by the ALJ. The District Court agreed that the claimant had the burden of showing good cause and failed to satisfy it, thereby adopting the Magistrate Judge's report.

*Matthews*, 239 F.3d at 595 (internal citations, quotations and footnotes omitted). Since Cox does not explain why she failed to *obtain* Kotch's completed questionnaire form when it could have been considered by the ALJ, she is not entitled to a remand at this stage.

The Court acknowledges that the documentary evidence supplied by Dr. Eisler and Kotch was submitted to the Appeals Council prior to the denial of Cox's request for review. (R. at 4). As noted earlier, however, the Court has no jurisdiction to review that denial. *Browning*, 958 F.2d at 822-823. The "decision" presently under review is the ALJ's decision (*i.e.,* the Commissioner's "final decision") denying Cox's applications for DIB and SSI benefits. If the Appeals Council had granted Cox's request for review and issued *its own decision* denying her applications, the Court could have considered all of the evidence submitted to the Appeals Council in determining whether the Commissioner's decision was "supported by substantial evidence." *Eads v. Secretary of the Dept. of Health & Human Services*, 239 F.3d 589, 817 (7th Cir. 1993). Nonetheless, the

Court is free to consider only the evidence that was before the ALJ (and not the evidence that·was later submitted to the Appeals Council) where, as here, the "decision" under review is the decision rendered by the ALJ.[4]  *Matthews*, 239 F.3d at 590-595. Accordingly, the Court's review in this case can account only for the evidence that was before the ALJ when she issued her decision on September 3, 2008.

Cox argues that the ALJ erred in rejecting opinions which had been expressed by Dr. McGorrian.  (Doc. No. 11 at 11-17).  On February 26, 2007, Dr. McGorrian signed a statement indicating that Cox's mental condition precluded her from engaging in *any form* of gainful work for a period of two years.  (R. at 236-238).  Such an opinion, if credited, would establish that Cox's "disability" was long enough to satisfy the 12-month durational requirements of the Act.  *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002).  Nevertheless, the ALJ determined that Dr.

---

4

This is an issue which has divided the Courts of Appeals. Compare *Ingram v. Barnhart*, 496 F.3d 1253, 1262-1267 (11th Cir. 2007), *Higginbotham v. Barnhart*, 405 F.3d 332, 336-337 (5th Cir. 2005), *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996), *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994), *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992), and *Wilkins v. Secretary of the Dept. of Health & Human Services*, 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*), (holding that evidence not presented to the ALJ but later submitted to the Appeals Council, which later denies review, should be considered by the District Court in determining whether the Commissioner's decision is "supported by substantial evidence"), with *Matthews v. Apfel*, 239 F.3d 589, 590-595 (3d Cir. 2001), *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993), and *Eads v. Secretary of the Dept. of Health & Human Services*, 983 F.2d 815, 817-818 (7th Cir. 1993), (holding that evidence not presented to the ALJ but later submitted to the Appeals Council, which later denies review, should *not* be considered by the District Court in determining whether the Commissioner's decision is "supported by substantial evidence"). See also *Mills v. Apfel*, 244 F.3d 1, 4-6 (1st Cir. 2001), (stating that while an ALJ cannot be faulted for failing to consider evidence that was not presented to him or her, a decision of the Appeals Council denying a claimant's request for review may be reviewed by a District Court where the Appeals Council has articulated an "egregiously mistaken ground" for its denial). This Court, of course, must adhere to the decision of the United States Court of Appeals for the Third Circuit in *Matthews*.

18

McGorrian's statement was not significantly probative because it was conclusory in nature. (R. at 18). It was the prerogative of the ALJ to reach this conclusion. A statement by a treating physician declaring a claimant to be "disabled" can never be accorded "controlling weight," since the ultimate question of disability is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990). Some federal courts have concluded that unsupported opinions of "disability" are not even "medical opinions" entitled to consideration. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Luce v. Astrue*, 523 F.Supp.2d 922, 936 (S.D.Iowa 2007); *Earl-Buck v. Barnhart*, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006); *Wheat v. Barnhart*, 318 F.Supp.2d 358, 364, n. 11 (M.D.La. 2004). In any event, a statement by a treating physician concerning the ultimate issue of disability is entitled to very little weight in the absence of evidence indicating that the physician making the statement possesses vocational expertise. *Wadford v. Continental Casualty Co.*, 261 F.Supp.2d 402, 412 (W.D.N.C. 2003).

Opinions expressed by treating physicians concerning a claimant's specific functional limitations are undoubtedly "medical opinions" under the Commissioner's regulations. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Dr. McGorrian found Cox to be "markedly" limited in her abilities to understand, remember and

19

carry out detailed instructions, to maintain attention and concentration for extended periods of time, to work with or near others without being distracted, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 379-380). Dr. Newman, however, reported that his consultative evaluation of Cox had revealed no "marked" limitations. (R. at 215). Dr. Tarter, a nonexamining medical consultant, expressed agreement with Dr. Newman's findings. (R. at 218-220). Where such a conflict in the evidence exists, it is the prerogative of the ALJ to decide which opinions to credit and which opinions to reject. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Admittedly, the United States Court of Appeals for the Third Circuit has stated that the opinion of a treating physician should ordinarily be accorded more weight than that of a nonexamining medical consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Nevertheless, Dr. Tarter's opinion in this case was buttressed by that of Dr. Newman, who was an *examining* physician. (R. at 212-217). Since consultative examiners generally possess both the expertise to render reliable opinions concerning a claimant's work-related limitations and the impartiality to do so in an objective manner, the well-supported report of a consultative examiner ordinarily constitutes "substantial evidence" upon which a residual

functional capacity determination can be based. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985).

In determining Cox's residual functional capacity, the ALJ generally accommodated the limitations identified by Dr. McGorrian. For instance, the ALJ accounted for Cox's inability to understand, remember and carry out detailed instructions by limiting her to only "simple" job tasks and instructions, and by eliminating positions "requiring that she pay close attention to details or complicated instructions or job tasks." (R. at 14). The ALJ addressed Cox's susceptibility to being distracted by others by eliminating positions "involving close interaction with co-workers, the general public, or supervisors." (*Id.*). Because Cox's inability to maintain her concentration for extended periods of time could lead to dangerous situations in certain work environments, the ALJ determined that she could not climb ladders, operate a motor vehicle, be exposed to unprotected heights, or work near dangerous machinery. (*Id.*). Finally, the ALJ accounted for Cox's inability to respond appropriately to work pressures and changes in usual and routine work settings by limiting her to "low stress environments" which did not involve production-based expectations. (*Id.*). To the extent that some of the limitations found by Dr. McGorrian were *not* reflected in the ultimate residual functional capacity finding, the ALJ was free to reject those limitations on the basis of the countervailing medical evidence

21

provided by Dr. Newman and Dr. Tarter. *Rutherford v. Barnhart*, 399 F.3d 546, 553-555 (3d Cir. 2005). Thus, the ALJ's residual functional capacity determination is "supported by substantial evidence."

Cox argues that the ALJ's hypothetical questions to Kopar were defective. (Doc. No. 11 at 26-27). At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). In order for a vocational expert's answer to a hypothetical question to constitute "substantial evidence" of the existence of jobs consistent with the claimant's residual functional capacity, the hypothetical question itself must "adequately convey" to the vocational expert *all* of the claimant's credibly established limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

In a series of hypothetical questions posed to Kopar, the ALJ accounted for all of the limitations later incorporated into her residual functional capacity finding except for Cox's limitation to "medium" work.[5]  (R. at 76-78). In her first hypothetical

---

5

The regulations defining the term "medium work" provide:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of

22

question, the ALJ described an individual "with no exertional limitations" who had some of the nonexertional limitations later incorporated into the residual functional capacity determination. (R. at 76-77). Kopar identified the positions of laundry worker, sorter and telephone quotation clerk. (R. at 77). She testified that the position of laundry worker was classified at the "medium" level of exertion, that the position of sorter was classified at the "light" level of exertion, and that the position of telephone quotation clerk was classified at the "sedentary" level of exertion. (*Id.*). When the ALJ added additional limitations that were later incorporated within her residual functional capacity finding, Kopar testified that such limitations would not compromise an individual's ability to perform the duties of the positions which she had identified in response to the first hypothetical question. (R. at 77-78).

The Court acknowledges that, in most instances, the omission of an established limitation from a hypothetical question renders the vocational expert's answer to that question defective. *Ramirez*, 372 F.3d at 552-555. Nevertheless, the purpose for requiring a hypothetical question to incorporate all of the claimant's limitations is to ensure that the vocational expert does not identify positions that would be precluded by an omitted

objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. §§ 404.1567(c), 416.967(c).

23

limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002). In this case, the Court can definitively determine that Kopar did not identify positions requiring the performance of tasks beyond Cox's residual functional capacity. An individual who is capable of engaging in "medium" work is also capable of engaging in "light" and "sedentary" work. 20 C.F.R. §§ 404.1567(c), 416.967(c). None of the positions described by Kopar required the performance of tasks exceeding the "medium" level of exertion. (R. at 77). For this reason, the ALJ's failure to include Cox's limitation to "medium" work within the hypothetical question was inconsequential. The United States Court of Appeals for the Third Circuit has held that a remand for further administrative proceedings is unwarranted where it is clear that a mistake or oversight has not affected the outcome of the Commissioner's ultimate decision. *Rutherford*, 399 F.3d at 553.

The ALJ asked Kopar whether one's ability to work as a laundry worker, sorter or telephone quotation clerk would be compromised if he or she could have *no* interactions with co-workers or members of the general public. (R. at 78). Kopar testified that such extreme limitations would preclude an individual from performing the duties of "any job." (*Id.*). The ALJ, however, did not find Cox to be so limited. (R. at 14). Therefore, the ALJ was entitled to rely on Kopar's answers to the earlier hypothetical questions in order to determine that jobs consistent with Cox's residual functional

24

capacity existed in the national economy. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 205-206 (3d Cir. 2008).

Cox also argues that the ALJ erred in determining that her impairments did not meet or medically equal Listings 12.04 and 12.06. (Doc. No. 11 at 27-29). She contends that Dr. McGorrian's findings, if credited, would have warranted a determination that her impairments had rendered her *per se* disabled under those Listings. (*Id.* at 28). This contention is significantly undermined by the fact that, at the hearing, Cox's counsel *conceded* that Dr. McGorrian's findings *did not* warrant a finding of *per se* disability. (R. at 48). Even if it is assumed that Dr. McGorrian's opinion supported a finding of *per se* disability under Listings 12.04 and 12.06, Cox's argument cannot carry the day in light of the Court's earlier determination that the ALJ was not required to credit that opinion in any event. The ALJ adequately explained why she did not believe Cox's impairments to warrant a finding of *per se* disability. (R. at 13). Cox cannot impugn the ALJ's analysis, since the Court has already concluded that "substantial evidence" supports the ALJ's determination that Cox had no "marked" limitations. Moreover, the ALJ's analysis is sufficient to provide for meaningful judicial review of her determination at the third step of the sequential evaluation process. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). Under these circumstances, an affirmance of the

25

Commissioner's administrative decision is proper.

**V.   Conclusion**

The ALJ's assessment of Cox's residual functional capacity was primarily based on the findings of Dr. Newman, who examined Cox during the period of time at issue.  (R. at 19, 212-217).  It is firmly established that the well-supported opinion of an examining physician can constitute "substantial evidence" upon which an administrative determination under the Act can be based.  *Alford v. Secretary of the Dept. of Health & Human Services*, 934 F.Supp. 134, 137 (D.N.J. 1995).  Accordingly, the Court is convinced that the Commissioner's determination that Cox was not "disabled" within the meaning of the Act between May 23, 2006, and September 3, 2008, is "supported by substantial evidence" within the meaning of § 405(g).

AND NOW, this $\underline{15^{th}}$ day of May, 2010, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Plaintiff (Doc. No. 10) is DENIED, and that the motion for summary judgment filed by the Defendant (Doc. No. 12) is GRANTED.  In accordance with the fourth sentence of 42 U.S.C. § 405(g), the administrative decision of the Commissioner of Social Security is hereby AFFIRMED.

BY THE COURT:

Hon. Gary L. Lancaster
Chief United States District Judge

cc:  All counsel of record

26